# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Juan J.,

        Petitioner,

v.

Todd Blanche, *Acting Attorney General of the United States*; Markwayne Mullin, *Secretary of the U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of U.S. Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; Eric Tollefson, *Sheriff of Kandiyohi County*;

        Respondents.

File No. 26-CV-2977 (JMB/SGE)

**ORDER**

---

Jason L. Schellack, Autism Advocacy & Law Center, LLC, Minneapolis, MN, for Petitioner Juan J.

David W. Fuller and Pedro Del Valle, IV, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David J. Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Juan J.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names as Respondents Todd Blanche, Markwayne Mullin, David. J. Venturella, David

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

1

Easterwood, and Eric Tollefson (Respondents). Respondent Eric Tollefson has not appeared. For the reasons explained below, the Court grants the Petition.

## FINDINGS OF FACT

1.      Juan J. is a 19-year-old citizen of Mexico and resident of Brooklyn Park, Minnesota. (Pet. ¶¶ 7, 19.)

2.      Juan J. entered the United States as a minor on October 24, 2023, at the age of 16, when his mother took him and two siblings across the United States border, and he has resided in the United States since that time. (*Id.* ¶ 16–17.) Juan J. and his family were apprehended as they entered the United States. (Doc. No. 7-3 at 3.)[2]

---

[2] In Respondents' legal memorandum, they misstate the facts, asserting that Juan J. entered the United States "on an unknown date." (Doc. No. 6 at 2.) While the legal memorandum accurately cites to paragraph 4 of the declaration of Deportation Officer Adam B. Mickelson (*see* Doc. No. 7 ¶ 4 (stating "Petitioner entered the United States without inspection on an unknown date")), this paragraph generally refers to Form I-862, which does not support the assertion being made. Contrary to Respondents' assertion and Mickelson's statement to this Court (made under penalty of perjury), Form I-862 does not indicate that Juan J. entered at an unknown location or an unknown date; instead, it states that he "arrived in the United States at or near Del Rio, TX, on or about October 24, 2023." (Doc. No. 7-2 at 1.) Moreover, other documents attached to the Mickelson Declaration indicate that Juan J. and his family were apprehended as they entered the United States. (*See* Doc. Nos. 7-1 (Form I-213, dated October 26, 2023, indicating "Place, Time, and Manner of Last Entry" as "10/24/2023, 1800, 4 mile(s) S of DLR"; describing his "Status When Found" as "IN TRAVEL" and the "Length of Time Illegally in U.S." as "AT ENTRY"); 7-3 (Form I-213, dated June 12, 2026, indicating a specific time and place of entry: "On or about October 24, 2023, [Juan J.] entered the United States at Del Rio, Texas," where he was arrested, served an Notice to Appear, and released on his own recognizance).) The misrepresentation in the Mickelson Declaration, as well as the fact that Mickelson does not attest to having personal knowledge of the facts and circumstances of Juan J.'s arrest (*see* Doc. No. 7 ¶ 3 (stating that the statements are "based on [Mickelson's] personal and professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers"), leaves the Court with significant doubts as the veracity of the statements made by Mickelson.

2

3.      Juan J. was arrested and released on his own recognizance pursuant to 8 U.S.C. § 1226(a).  (Doc. No. 7-3 at 2–3.)

4.      After his arrest, Juan J.'s mother was served with a Notice to Appear in person for a removal proceeding before an immigration judge in Dallas, Texas, on June 22, 2028.  (Doc. No. 7-2 at 1 (noting date and time of the proceeding); 2 (showing the handwritten first and middle names of Juan J.'s mother ("Maria Luisa") where the form indicates "Signature of Respondent if Personally Served").)

5.      Juan J.'s order of release has not been revoked.

6.      Juan J. attends public school at Park Center High School in Brooklyn Park, Minnesota.  (Pet. ¶ 19.)  He has an intellectual disability and receives special education services; although he is 19 years old, Juan J. has two years remaining to graduate from high school.  (*Id.*)

7.      Juan J.'s most recent immigration check-in was on April 28, 2026, and he does not have a final order of removal entered against him.  (*Id.* ¶ 18.)  The federal government granted Juan J. authorization to obtain employment while on release, and he works in the construction industry.  (*Id.* ¶ 20; Doc. No. 7-3 at 3 (noting that on July 8, 2025, the United States Citizenship and Immigration Services approved Juan J.'s application for employment authorization).)

8.      Juan J. has no criminal history.  (Doc. No. 7-3 at 3.)

9.      On or about June 11, 2026, Respondents arrested Juan J. in Bemidji, Minnesota while he was at work.  (Pet. ¶ 21.)  ICE/ERO officers suspected unidentified persons at the work site were "residing and working in the United States illegally."  (Doc.

No. 7-3 at 2.)  While conducting surveillance, ICE/ERO officers observed unidentified persons who "scattered and ran."  (*Id.*)[3]  These officers pursued and apprehended "the remainder of the subjects," including Juan J.  (*Id.*)

10.    Respondents did not show Juan J. a warrant when they arrested him, nor did Respondents ask him for identification.  (Pet. ¶ 22.)  In addition, since entering ICE custody, Juan J. has not received any documentation addressing the basis for his arrest or continued detention.  (*Id.* ¶ 23.)

11.    The Form I-200 administrative warrant in this case was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations."  (Doc. No. 7-4.)  Thus, Respondents arrested Juan J. pursuant to their discretionary authority under 8 U.S.C. § 1226.

12.    The administrative warrant also includes a certification that an officer served Juan J. a copy of the administrative warrant on that same date.  (Doc. No. 7-4 at 1.)  This document, however, does not indicate any time of service, and the Court cannot conclude that the administrative warrant was issued prior to Juan J.'s arrest.  In addition, the

---

[3] Again, Respondents' legal memorandum and the Mickelson Declaration misstate the facts, asserting that Juan J. was arrested while he was "attempting to flee the area."  (Doc. No. 7 ¶ 5; Doc. No. 6 at 2.)  This characterization is not supported by the record or the document on which the assertion relies.  (*See* Doc. No. 7-3 at 2 (describing unidentified persons who "scattered and ran").  Contrary to Respondents' and Mickelson's conclusory assertion, there is no evidence of why the workers ran or, more importantly, why Juan J. himself ran or whether Juan J. had any knowledge of the presence of ICE/ERO officers. Nor is there evidence of where any of the apprehended individuals ran to, or that they were attempting to leave the Bemidji area.

document has notable errors.  For instance, the name on the administrative warrant does not include Juan J.'s full surname.  (*Id.*)  More importantly, the form document includes five boxes for the issuing administrative officer to check as the basis for the warrant; the issuing officer checked none.  (*Id.*)

13.     Juan J. remains detained at the Kandiyohi County Jail in Willmar, Minnesota. (Pet. ¶ 7.)

14.     On June 16, 2026, Juan J. filed his Petition.  (*See id.*)

15.     On June 17, 2026, the Court ordered Respondents to respond to the Petition by or before 11:00 a.m. on June 19, 2026.  (Doc. No. 4.)

16.     The Respondents who have appeared timely filed a Response.  (Doc. No. 6.)

17.     After the Court granted Juan J.'s request to file a reply brief, Juan J. filed a Reply on June 25, 2026.  (Doc. No. 10.)

## DISCUSSION

In his Petition, Juan J. seeks immediate release, arguing that his detention violates the Fourth and Fifth Amendments as well as applicable federal regulations.  For their part, Respondents argue that Juan J. is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  For the reasons set forth below, the Court grants the Petition.

### A.     Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the

Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)).  For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted).  The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted).  The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence.  *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B.    Procedural Requirements of 8 C.F.R. § 236.1**

The Court concludes that Juan J.'s re-detention violates federal regulations because Respondents re-detained him without first revoking his 2023 order of release.

Federal regulations set forth a "series of procedural protections" to lawfully re-detain a person previously ordered released, as follows:

> To properly redetain [a person] under section 236, an immigration officer first would have had to exercise his or her discretion to revoke [the person's] release on bond.  After [the person] was redetained, his bond would have had to have been revoked and cancelled.  [The person] then could have applied to an immigration judge for a bond hearing and release.  If the immigration judge denied his request, [the person] could have appealed that decision to the BIA.

*Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (concluding respondents violated applicable federal regulations and the Due Process Clause when they re-detained petitioner without complying with 8

6

C.F.R. § 236); *see also, e.g.*, *Salazar v. Noem*, No. 26-CV-1040 (JMG), 2026 WL 381889 (D. Minn. Feb. 11, 2026) (collecting cases) (same); *Hakan v. Noem, et al.*, No. 25-CV-4722 (JMB/DTS), Doc. No. 14, at *9–11 (D. Minn. Dec. 24, 2025) (same).

Here, Respondents present no facts regarding any decision to revoke Juan J.'s release order and make no argument that revocation was lawful. Further, there is no indication in the record presented that any official afforded Juan J. any process prior to his arrest. It is undisputed that Juan J. was released on his own recognizance in 2023 pursuant to 8 U.S.C. § 1226 and had been residing in the United States pursuant to that decision for almost three years prior to his June 11, 2026 arrest. The record also shows that no official made any individualized, discretionary decision to revoke Juan J.'s section 1226 release.[4]

## C. Invalidity of Petitioner's Arrest

Separate and apart from the failure to revoke the order releasing Juan J. in 2023, the Court concludes that Juan J.'s arrest was unlawful because the warrant underlying the arrest was not valid, and no exception to the warrant requirement exists in this case.

First, the Court observes that Respondents arrested Juan J. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant in this case was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-4.) In

---

[4] The Court is also persuaded by the analysis in *Barco Mercado* that re-detention absent a revocation of the prior release order violates the Due Process Clause, as asserted in Count I. The Court grants the Petition on this independent basis as well.

response to the Petition, however, Respondents advance a different basis for the arrest and detention of Juan J.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry).

This Court concludes that Respondents cannot now change the basis for the arrest of Juan J.  He was arrested under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions.  Thus, just as it is stated in the Form I-200 on which the arrest and detention is based, the Court concludes that Respondents have detained Juan J. pursuant to the framework of 8 U.S.C. § 1226.  *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

Second, having found that Respondents have detained Juan J. pursuant to section 1226, the Court next considers whether Juan J. was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless arrest.  For the reasons discussed below, the Court concludes he was not.

8

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States."  8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (quotation omitted)).

Here, Respondents have provided the administrative warrant dated June 11, 2026. (*See* Doc. No. 7-4.)  However, this warrant contains no basis for its legal determination. The issuing officer neglected to select any of the available options that could have justified the legal determination of probable cause. (*See id.*)  Absent any basis, the warrant cannot be valid.  Respondents have therefore failed to produce a valid warrant to effectuate an arrest pursuant to section 1226(a.)  Because Juan J.'s arrest was pursuant to an invalid warrant and therefore unlawful, immediate release is the appropriate remedy.  *See Jose R.M.M. v. Bondi*, No. 26-CV-1165 (JRT/DTS), 2026 WL 412447, at *1 (D. Minn. Feb. 13, 2026) (granting release because Respondents provided a warrant with all boxes for probable cause determinations unchecked); *see also Ahmed M. v. Bondi*, No. 25-CV-4711, 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (finding that release is the appropriate remedy where Respondents did not produce a valid warrant).

To the extent that Respondents alternatively seek to justify Juan J.'s arrest under the warrantless arrest provisions of 8 U.S.C. § 1357(a), the Court cannot agree because the record presented cannot support the necessary finding of probable cause.

Section 1357 permits an immigration officer to "arrest any [non-citizen] in the

United States" without a warrant "if he has reason to believe that [1] the [non-citizen] . . . is in the United States in violation of any such law or regulation *and* [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted the term "reason to believe" in section 1357(a)(2) to "mean[] constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Here, the record presented contains no evidence to satisfy the first prong. Respondents' brief states that they initially detained individuals at the Bemidji site "for the limited purpose of verifying their right to remain in the United States" and that "[f]or those individuals whose interrogation resulted in the determination that they are not lawfully admitted or paroled into the United States, a Form I-200 was issued on scene." (Doc. No. 6 at 12.) Respondents' statement, however, is not supported by any evidence in the record. Respondent's brief cites the Mickelson Declaration (and only the Mickelson Declaration) to support these statements (Doc. No. 6 at 12 (citing Doc. No. 7 ¶ 5)), but the cited paragraph of the Declaration contains no information whatsoever about an investigative detention or interview of Juan J. (Doc. No. 7 ¶ 5.) Indeed, this paragraph contains no summary of any interview with or statements made by any person. (*Id.*) Nor does it include any information concerning whether Juan J. or any other individual is unlawfully in the United States. (*Id.*) Therefore, the cited portion of the Declaration cannot support the stated proposition. Because Respondents make no other argument concerning satisfaction

10

of the first prong, Respondents have offered no evidence to satisfy the first prong.[5]  Thus,

Juan J.'s detention was unlawful, and he is entitled to release.[6]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Juan J. immediately in Minnesota, and in any event no later than 4:00 p.m. CT on July 3, 2026.

2. On or before 11:00 a.m. CT on July 6, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Juan J.

3. On or before 11:00 a.m. CT on July 6, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with

[5] Because the Court concludes that Respondents have failed to satisfy the first prong of *Quintana*, 623 F.3d 1237, it need not address the second prong.  Specifically, the Court need not determine whether the record contains sufficient evidence that Juan J. ran in an attempt to escape or flee the Bemidji area before a warrant could be obtained, as opposed to some other reason, such as out of general fear upon observing those around him run or a more particularized fear for his safety in light of the various high profile deaths and injuries that have occurred in Minnesota during targeted immigration operations. Nevertheless, the Court is concerned that the record contains little, if any, evidence concerning what Juan J. did and why.

[6] Although the Court need not address the question of whether Juan J.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Juan J.'s favor.  Juan J. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community.  Thus, Juan J.'s ongoing detention is also unlawful for this reason as well.  *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Juan J. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Juan J. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  July 2, 2026                                      /s/ *Jeffrey M. Bryan*
                                                          Judge Jeffrey M. Bryan
                                                          United States District Court